UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:25-mj-152-MAU |
| : | |
| EDWARD ALEXANDER DANA, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S DETENTION MEMORANDUM AND
REQUEST FOR COMPETENCY EVALUATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this detention memorandum in the above-captioned case. For the reasons below, and for additional reasons to be argued at the detention hearing, the defendant poses an "identified and articulable threat to the community" that no presently available conditions of release would prevent. *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021). Moreover, there is reasonable cause to believe that the defendant may presently be suffering from a mental health condition that affects his competency to understand the proceedings and assist in his defense. *See* 18 U.S.C. § 4241(a). Accordingly, the Court should order the defendant detained and direct that a psychiatric or psychological examination be conducted.

I.   THE DEFENDANT SHOULD BE DETAINED.

A detention hearing in this case is warranted under 18 U.S.C. § 3142(f)(1)(A) because the charged offense, 18 U.S.C. § 871 (Threats against the President), is a crime of violence. *See, e.g.*, *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017) (citing two sister circuits for holding that § 871 is a crime of violence).

At the detention hearing, the government will proffer facts, show exhibits, and offer argument relating to the factors identified in the Bail Reform Act, including (1) the nature and

circumstances of the offense; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the defendant's danger to the community. *See* 18 U.S.C. § 3142(g). Those factors collectively will establish by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f).

The government offers this written submission to provide documentation of certain facts that are especially relevant to the detention hearing.

### A. The defendant's probation status and record of conduct.

As an initial matter, just before filing this pleading the government learned from Pretrial Services that the defendant is currently on probation, with his term having been extended because of a re-arrest in either October of 2024 or January of 2025. Consequently, the defendant is subject to a ten-day hold under 18 U.S.C. § 3142(d)(1)(A)(iii). The Court must also consider the defendant's probation status as one of the factors under the Bail Reform Act. *See* 18 U.S.C. § 3142(g)(3)(B).

Along with his probation status, the Pretrial Services Report lists 9 prior convictions and 23 prior arrests for the defendant. The government has obtained D.C. Metropolitan Police Department (MPD) reports containing additional information about certain prior arrests and other contact with law enforcement, relevant portions of which are attached here as Exhibit 1. The reports demonstrate a lengthy pattern of violent and erratic behavior that has appeared to increase in frequency in recent months. Among other events, the reports show:

- On August 11, 2017, the defendant reportedly physically and sexually assaulted two acquaintances. When MPD officers arrested him, the defendant resisted and attempted to grab an officer's holstered firearm. *See* Ex. 1 at 1-2.

- On October 31, 2022, the defendant rode a bicycle rapidly toward an intersection that was closed by the Secret Service for a motorcade to pass. The defendant ignored

2

commands to stop and, when later approached, claimed that he didn't need to listen to police. *See id.* at 4.

- On November 12, 2022, the defendant attempted to climb the fence of an Ambassador's residence. *See id.* at 5.

- On June 13, 2023, while inside a restaurant, the defendant began banging on a window, breaking the glass and causing "serious injury to his person." *See id.* at 8.

- On July 25, 2024, during an interaction with a city parking-enforcement employee, the defendant "became verbally abusive and spat on" the employee, then ripped paper parking signs into small pieces. *See id.* at 9.

- On June 22, 2025, while driving in his SUV, the defendant threatened pedestrians that he was going to "run [them] over" and then sped past them while they were crossing the street. *See id.* at 10.

- On June 22, 2025, the defendant the defendant damaged the front entrance glass doors of a restaurant. When located, the defendant appeared to be suffering a mental health crisis; he claimed that he was part of a sleeper cell and would bomb places. *See id.* at 11.

- On August 17, 2025, the defendant destroyed property at a restaurant and nearly fought a witness, leading to his arrest and the charged offense conduct. *See id.* at 12.

At the detention hearing, the government will show video from the night of the charged offense showing further erratic behavior by the defendant, including making threats against various parties, slamming his head against a police car, laying on the floor while shouting at officers, and standing naked in his cell shouting at officers after having removed all of his clothing. Also while in lockup, according to police reports, the defendant threw toilet water toward other detainees.

As the government will argue, this pattern of conduct bears negatively on the defendant's "character, … mental condition,… past conduct, history relating to drug or alcohol abuse, [and] criminal history," 18 U.S.C. § 3142(g)(3)(A), and clearly and convincingly indicates that he poses a danger to "any other person and the community" — at least unless and until his mental health issues are properly identified and addressed. As discussed below, that is not presently the case.

**B. The defendant's mental health status**

Given the evident mental health symptoms on display during and after the offense conduct, the government requested that the defense provide information about the defendant's mental health condition and about what treatment plan would take effect if he were to be released.

In response, defense counsel tendered one document, ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████.

After receiving the report, the government requested further information, including but not limited to ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████.

4

In reply, defense counsel provided a letter from the defendant's case manager, stating (among other things) that the defendant is enrolled in a transitional housing program that requires his compliance with program rules and obligations, and that the defendant has "been trying to identify mental health services that work best for him" but that insurance has been an issue. Ex. 3 at 1 (also filed as Def. Ex. 1). The letter acknowledges that the defendant "has a problem with his drinking" for which they "have been looking into various programs to enroll him in." *Id.* The letter states that the defendant's housing is monitored by cameras, and that a case manager "is expected" to be present eight hours a day, four days a week. *Id*. Defense counsel also provided an unsigned Program Agreement form to be completed by participants in the transitional housing program, and a copy of the program's rules and regulations. *See* Ex. 4, 5. Finally, defense counsel represented that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The government submits that these proposed release conditions fall far short of what is necessary to prevent the defendant from engaging in further violent and destructive conduct. The evaluation provided by the defense (which is more than five years old) creates more cause for concern, not less, because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is fully consistent with the apparently delusional thinking that the defendant displayed at and around the time of the charged offense. And to the extent the program manager's letter sets forth next steps, it is just a plan to make a plan. It identifies no concrete steps that will be taken, and makes

---

[1] "Gabapentin is approved to prevent and control partial seizures, relieve postherpetic neuralgia after shingles and moderate-to-severe restless legs syndrome." *See* Cleveland Clinic, "Gabapentin," *available at* https://my.clevelandclinic.org/health/drugs/21561-gabapentin.

clear that in the meantime the defendant will be living in transitional housing largely independently and without real-time supervision.

This is not enough. To properly protect the safety of the community, the defendant must remain in custody until the following steps are achieved:

1. His present mental health condition is accurately diagnosed;

2. He is prescribed an appropriate course of treatment;

3. That course of treatment proves effective in controlling delusional thinking and preventing violent and impulsive behavior; and

4. A release plan is proposed that would ensure the continued effective continuation of that treatment outside the custodial setting.

Because not even the first step in this sequence has been accomplished, the defendant cannot be released.

## II. A COMPETENCY EVALUATION IS WARRANTED.

For the same reasons as above, the government submits that a competency hearing should be ordered because there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). After ordering such a hearing, the Court can and should "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." 18 U.S.C. § 4241(b).

The defendant's behavior on the night of the offense displayed sharp contrasts. At times, he was calmly asking officers about the nature of the charges he was facing, displaying an apparent ability to understand the proceedings. At other times, he was making bizarre claims about the CIA, his involvement with the Russian mafia, and his ability to have Putin bomb the United States in

retaliation for the arrest. On this record, and especially given his history of mental health episodes and the open questions about his current condition, there is legitimate question about his competency to proceed.

If the evaluation puts to rest any doubts about his competency, no competency hearing need take place. But the known facts indicate that an evaluation would be prudent, especially because such an evaluation would result in the defendant promptly receiving a diagnosis and treatment, which (as noted above) are the first steps that must be taken before the Court can even begin to consider appropriate conditions of release.

## CONCLUSION

For the foregoing reasons, and for reasons to be argued at the detention hearing, the Court should (1) order the defendant detained pursuant to the Bail Reform Act, and (2) order a competency evaluation pursuant to 18 U.S.C. § 4241.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Conor Mulroe*
CONOR MULROE
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 740-4595
Conor.Mulroe@usdoj.gov